UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

No. 06-CR-05-KKC

UNITED STATES OF AMERICA                                               PLAINTIFF

V.                         RECOMMENDED DISPOSITION

DONNIE ANDREW BARRON                                                  DEFENDANT

\* \* \* \* \*

The Court, on referral, *see* DE #62, considers reported violations of supervised release conditions by Defendant Donnie Andrew Barron. This District originally convicted Defendant for aiding and abetting the manufacture of 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. *See* DE #59 Judgment (August 24, 2006). Barron's original punishment terms were 30 months of imprisonment followed by 5 years of supervised release. Barron began his supervised release term on October 24, 2008.

The USPO issued a Supervised Release Violation Report less than two months later, on December 5, 2008, and secured a warrant from the District Judge. Barron appeared for initial proceedings under Rule 32.1 on March 5, 2009. *See* DE #66 Minutes.

At a final hearing, Defendant competently entered a knowing, voluntary, and intelligent stipulation to the Report's charges, after the Court afforded Barron all rights due under Rule 32.1 and 18 U.S.C. § 3583.[1]  The parties offered a recommendation as part of the stipulation that

---

[1] The Court offered a Rule 32.1 preliminary hearing, which Defendant competently waived. *See* DE #66. The Court thus set and conducted a final hearing. Barron validly stipulated to the content of the Report, and the Court offered the parties the opportunity to present any proof and make any argument concerning the proper disposition of the matter. The Court also expressly

expressly was nonbinding.

The Report alleges that, on November 13, 2008, Barron submitted a urine sample that tested positive for oxycodone. Barron repeatedly contested use, and the USPO lab-verified the positive sample. At the final Rule 32.1 hearing, Barron validly conceded the violations. The conduct confessed would violate the Judgment's restriction against controlled substance use. *See* DE #59 Judgment. Further, unlawful controlled substance possession in this instance would be a felony under federal and Kentucky law. *See* 21 U.S.C. § 844(a)(simple possession, as felony, with prior drug conviction); KRS § 218A.1415(making possession of oxycodone a felony). As such, Barron's behavior also broke the condition forbidding him from unlawful conduct. *See* DE #59 Judgment. Defendant accepted responsibility at the final hearing and stipulated that, in the supervised-release context, both violations occurred as described. The stipulation and record, including the test results, establish the violative conduct under Rule 32.1 and § 3583.

The parties' nonbinding recommendation sought long-term, inpatient drug treatment with continued supervised release. The Court heard extensively from both sides and also sua sponte called USPO Rains to the stand to discuss the propriety of treatment and the § 3583(d) exception to mandatory revocation.

---

informed Defendant of his right of allocution before the District Judge.
    At the initial appearance, the Court also considered interim detention. The United States sought detention, and in the Court's assessment, Barron failed to carry the heavy release burden under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a), which expressly govern the analysis. Defendant did not establish, by clear and convincing evidence, that he would not flee or pose a danger if released during the interim. *See id*.

The Court has evaluated the full record, including the Report packet and sentencing materials from the underlying Judgment in this District. The Court has considered all of the § 3553 factors imported into the § 3583(e)(3) analysis.

Under § 3583, a defendant's maximum penalty for a supervised release violation[2] hinges on the gravity of the underlying offense of conviction. Barron's Title 21 conviction is for a Class B felony. *See* 21 U.S.C. § 841(a)(1); 841(b)(1)(B); 18 U.S.C. § 3559. For a Class B felony, the maximum revocation sentence provided under § 3583 is three (3) years of imprisonment. *See* 18 U.S.C. § 3583(b)(2)). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007)("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.")(citation omitted). Under § 7B1.1(a)(2), the nature of Defendant's admitted conduct would qualify as a Grade B violation because it encompasses felonious conduct per 21 U.S.C. § 844(a) and/or KRS § 218A.1415(1).[3] With a criminal history category of III (the category at the time

---

[2] The proof standard is a preponderance of the evidence, *see* § 3583(e)(3), which Defendant's stipulation and the proffered corroborating evidence (including the USPO Report and lab results) obviously satisfy. The preponderance standard applies even when the alleged violation at issue is commission of another crime. Thus, absent stipulation, the United States would be required to prove the criminal elements by only a preponderance of the evidence. *See, e.g., United States v. Carlton*, 442 F.3d 802, 807-12 (2d Cir. 2006)(discussing § 3583(e) proof standards in context of alleged criminal conduct as supervised release violation).

[3] The Sixth Circuit treats controlled substance use as equivalent to possession, in the supervised release context. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000).

of the conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is 8-14 months.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* In this instance, the potential reimposed supervised release term has no durational cap, because the offense of conviction carried a supervised release term of "at least 4 years." *See* 21 U.S.C. § 841(b)(1)(B). Such language typically yields a finding of **no** statutory maximum. *See, e.g., United States v. Rogers*, 382 F.3d 648, 652 (7th Cir. 2004)(recognizing that "life sentence of supervised release" is conceivable under Class A drug felony, for which statutory punishment of § 841(b)(1)(A) required "at least 5 years" of supervised release); *see also United States v. Samour*, 199 F.3d 821, 824 n.2 (6th Cir. 1999)(noting that 21 U.S.C. § 841(b)(1)(C), which calls for "at least 3 years" of supervised release, "establishes a minimum, not a maximum").

The Court has carefully weighed the nature and circumstances of the offense[4] and Defendant's

---

Possession of meth would be a state felony. S*ee* KRS § 218A.1415 (making a felony of possession, as relevant, of methamphetamine). Further, with Defendant's record, even simple possession would become a felony under § 844(a).

[4] The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b)("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). This observation does not detract from but rather shapes the Court's analysis of the statutory factor encompassing offense conduct.

particular history and characteristics. Barron engaged in serious, felony conduct by possessing and using OC. The conduct occurred almost immediately upon Defendant's release from incarceration and commencement of supervision. His conviction was itself for a serious drug crime, and it is apparent that Barron continues to struggle with exposure to and use of controlled substances (an area the PIR indicates has been a constant source of difficulty for Barron through the years). Further, at Criminal History Category III, Defendant has a significant criminal record and shows a heightened need for deterrence. This history, along with the current conduct, indicates a need for the sentence to address public protection and Barron's under-sensitivity to the absolute requirement that he abide by restrictions from this Court.

Congress does *mandate* revocation in a case of this nature. By statute, the Court must revoke Defendant because he "possessed" a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession).[5] The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Barron's admitted use in this context undoubtedly results in application of § 3583(g)(1). *See United States v. Metcalf*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008)("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Barron's record of involvement in prior treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test

---

[5] Likewise, for a Grade B violation, as is the case here, the Guidelines require revocation. *See* § 7B1.3.

5

and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)").

The Court fully considered and evaluated that exception. Barron reports that he did complete the BOP's 40 hour program, although he did not qualify for the 500 hour program. USPO Rains had mixed testimony about the suitability of treatment, acknowledging that Barron seemed willing and that post-release treatment had not yet commenced at the time of the violation. The Court, in its discretion, feels that the facts do not warrant a full exception from the mandatory revocation term. *See United States v. Pratt*, 297 F. App'x 475, 478 (6th Cir. 2008)(noting trial court discretion on issue). Barron was resistant to admitting his problem early, and he certainly did not pursue treatment upon release. Further, Barron eschewed USPO help until he faced the point of revocation, and the record suggests OC use while on prior bond. As such, the Court cannot give Defendant a full exception to revocation. However, the Court is willing to extend to Barron a significant opportunity in treatment, per § 3553, consistent with programmatic descriptions by USPO Rains.

The Court recommends, based on the violations found:

1. Revocation and incarceration for a term of thirty (30) days, with Defendant to receive credit for all time in custody since execution of the warrant pertaining to this matter.

2. Thereafter, Defendant immediately shall commence supervised release for a term of five (5) years, which is the same term originally imposed. The release terms shall be those previously imposed by Judge Caldwell, with the following limited additions:

A. Upon release from custody, Barron immediately shall begin inpatient treatment at Crossroads in Corbin, Kentucky. That inpatient treatment shall run for thirty (30) days, as arranged and paid for by the USPO. During that period, Defendant shall

    make every effort to qualify for enrollment in the Crossroads transition program, and if accepted, Defendant shall enroll and cooperate in that program until satisfactorily discharged by Crossroads.

 B. It will be a condition of supervised release that Barron follow all program rules of Crossroads; expulsion from Crossroads for a program rule violation would likewise violate the supervised release terms imposed by the Court.

 C. If Barron fails to qualify for the transition program, then upon release from the inpatient program, he shall begin a 60 day period of home detention. The home detention terms will restrict Barron to his home at all times except for USPO pre-approved exceptions related to employment, medical care, drug or alcohol treatment, religious services, and attendance at legal proceedings or otherwise in the USPO's discretion. If not pre-approved for one of the stated reasons (and unless a medical emergency applies) Barron shall be at home during the entirety of the 60 day period.

 D. If Barron does qualify for and successfully complete the transition program, upon his release from the program, he shall be on supervised release but not under home detention.

After consideration of the entirety of Chapter 7, and applying the binding statutory factors in § 3553, the Court views the recommended sentence as sufficient but not greater than necessary to effectuate and comply with the statute's purposes. The Court carefully took the views of the United States into account in reaching this result, and the short revocation term reflects an effort to awaken Defendant to his legal obligations while promptly giving him access to treatment. While the result is below the Guideline range, the total term of revocation, inpatient and transitional treatment (or

home detention) produces a reasonable result that honors the sentencing factors.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, circulated at the hearing.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 12th day of March, 2009.



Signed By:
Robert E. Wier  REW
United States Magistrate Judge

G:\supr rel vio\barron-final.wpd